## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY YAKSIMA,<br>325 Beade Street<br>Plymouth, PA 18651<br>        *Plaintiff*<br>v. | JURY TRIAL DEMANDED<br><br>CIVIL ACTION<br><br>CASE NO. |
| ANDREW JOHN TUZINSKI<br>*In his individual and official capacity*<br>501 River Street<br>Forty Fort, PA 18704 | **COMPLAINT**<br><br><br>ELECTRONICALLY FILED |
| NICKOLAS BASOV<br>*In his individual and official capacity*<br>26 N. Baltimore Ave.<br>Mt. Holly Springs, PA 17065 | |
| ANTHONY SMITH<br>*In his individual and official capacity*<br>1271 Wyoming Ave.<br>Forty Fort, PA 18704 | |
| JOHN OWENS<br>*In his individual capacity*<br>1212 Main Street<br>Swoyersville, PA 18704 | |
| JEFF RAMIREZ<br>*In his individual capacity*<br>144 Academy Street<br>Luzerne, PA 18709 | |
| JOSHUA WOLINSKY<br>*In his individual capacity*<br>1212 Main Street<br>Swoyersville, PA 18704 | |
| FORTY FORT BOROUGH<br>1271 Wyoming Ave<br>Forty Fort, PA 18704,<br>        *Defendants*. | |

## COMPLAINT

## I. INTRODUCTION

1.      This is an action for damages brought under 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, the Fourteenth Amendment and for violations of Pennsylvania State law.

## II. JURISDICTION AND VENUE

2.      The foregoing paragraphs are incorporated herein by reference.

3.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution. Jurisdiction is based upon 28 U.S.C. § 1331 and the previously mentioned statutory and Constitutional provisions.

4.      Plaintiff invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide claims under state law as the state law claims are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper under 28 U.S.C. § 1391 in this Court because the conduct complained of occurred here and at least one defendant resides here.

### III. <u>PARTIES</u>

6.      The foregoing paragraphs are incorporated herein by reference.

7.      Amy Yaksima ("Plaintiff") is an adult individual and resides at 325 Beade Street, Plymouth, PA 18651.

8.      Nikolas Basov ("Basov") was at all relevant times to this complaint a police officer employed by the Forty Fort Police Department and acting under color of state law. Basov was leading the investigation, the commanding officer and/or supervisor for the other Defendants and/or individuals that conducted the unconstitutional activity as alleged *infra* and was responsible for their training, supervision and conduct. He also was responsible by law for enforcing the regulations and/or policies of the Forty Fort Police Department and ensuring that all individuals under his supervision and/or authority obeyed the laws of the United States and Commonwealth of Pennsylvania. At all relevant times, Basov was acting in such capacity as the agent, servant, and employee of Forty Fort. This suit is against Basov in his individual and official capacity.

9.      Anthony Smith ("Smith") was at all relevant times to this complaint a police officer employed by the Forty Fort police department and acting under color of state law. Smith was the senior officer and/or supervisor for the other Defendants and/or individuals that conducted the unconstitutional

activity as alleged *infra* and was responsible for their training, supervision and conduct. He also was responsible by law for enforcing the regulations and/or policies of the Forty Fort Police Department and ensuring that all individuals under his supervision and/or authority obeyed the laws of the United States and Commonwealth of Pennsylvania. At all relevant times, Smith was acting in such capacity as the agent, servant, and employee of Forty Fort. This suit is against Smith in his individual and official capacity.

10.     Andrew John Tuzinski ("Tuzinski") was the mayor of Forty Fort Borough at all times relevant to this complaint and acting under color of state law. As described in more detail *infra*, Tuzinski was intimately involved in the unconstitutional and illegal conduct and provided direction and encouragement for the other Defendants to engage in unconstitutional and illegal conduct. Tuzinski was the top policy maker and chief law enforcement officer for Forty Fort Borough and his words and/or directions were that of Forty Fort Borough. As the chief policy maker for Forty Fort Borough, and since he was personally involved in all aspects of the illegal conduct, Tuzinski was the supervisor for the other Defendants during the unconstitutional activity as alleged *infra* and was responsible for their training, supervision and conduct. Tuzinski's conduct, statements, and directions were the policy of Forty Fort Borough. He also was responsible by law for enforcing the

4

regulations and/or policies of Forty Fort and ensuring that all individuals under his supervision and/or authority obeyed the laws of the United States and Commonwealth of Pennsylvania. At all relevant times, Tuzinski was acting in such capacity as the agent, chief policy maker, servant, and employee of Forty Fort. This suit is against Tuzinski in his individual and official capacity.

11.    Officer John Owens ("Owens") is, and was at all times relevant to this complaint, a police officer employed by Swoyersville Borough and acting under color of state law. At all relevant times, Owens was acting in such capacity as the agent, servant, and employee of Swoyersville. This suit is against Owens in his individual capacity.

12.    Jeff Ramirez ("Ramirez") is, and was at all times relevant to this complaint, a police officer employed by Luzerne Borough and acting under color of state law. At all relevant times, Ramirez was acting in such capacity as the agent, servant, and employee of Luzerne Borough. This suit is against Ramirez in his individual capacity.

13.    Officer Joshua Wolinsky ("Wolinsky") is, and was at all times relevant to this complaint, a police officer employed by Swoyersville Borough and acting under color of state law. At all relevant times, Wolinsky was acting

in such capacity as the agent, servant, and employee of Swoyersville Borough. This suit is against Wolinsky in his individual capacity.

14.    Forty Fort Borough ("Forty Fort") is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs, and controls the Forty Fort Police Department.

15.    At all relevant times hereto, and in their actions and inactions, Defendants were acting alone and in concert under color of state law.

16.    At all relevant times hereto, all Defendants were acting directly or indirectly on behalf of Forty Fort.

17.    At all relevant times hereto, Owens and Wolinsky were acting directly or indirectly on behalf of Swoyersville.

18.    At all relevant times hereto, Basov, Smith, and Tuzinski were acting in the course and scope of their agency, authority, and/or employment with Forty Fort and under color of state law.

19.    At all relevant times hereto, Owens and Wolinsky were acting in the course and scope of their agency, authority, and/or employment with Swoyersville and under color of state law.

20.    Forty Fort employed Basov, Smith, and Tuzinski at all times relevant hereto.

21.     Swoyersville employed Owens and Wolinsky at all times relevant hereto.

22.     All Defendants worked in concert and coordination with each other at all times relevant hereto.

23.     Basov was the lead investigator on duty and in charge of the investigation during the time periods relevant to this complaint. Therefore, Basov was supervising and/or in charge of the conduct of his subordinates, including, but not limited to, Smith, Owens, Ramirez, and Wolinsky.

24.     Smith was the senior police officer on duty during the time periods relevant to the complaint. As such, Basov allowed Smith to direct certain conduct and inform certain decisions made during the time periods relevant to this complaint. Therefore, Smith was supervising and/or in charge of the conduct of his subordinates, including, but not limited to, Basov, Owens, Ramirez, and Wolinsky.

25.     Tuzinski was the mayor of Forty Fort and therefore, the policymaker for Forty Fort at all times relevant to this complaint. Tuzinski's directions and encouragement to all Defendants to engage in illegal and unconstitutional conduct therefore became the policy of Forty Fort.

26.     Defendants acted in concert when deciding to engage in the conduct described herein and in conducting the unconstitutional activity as described in detail *infra*.

27.     Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff as set forth fully below.

## IV. <u>STATEMENT OF CLAIM</u>

28.     The foregoing paragraphs are incorporated herein by reference.

29.     On or about February 6, 2021, Tuzinski called David Coslet ("Coslet"), a Pennsylvania State Parole Officer, to inform him that Gregory Albarella ("Albarella")[1] was wanted by the Forty Fort police for felony fleeing and eluding.[2]

30.     Tuzinski specifically requested Coslet's help in finding Albarella.

31.     Coslet met Tuzinski and Basov at the Forty Fort Police Department on February 6, 2021.

---

[1] Albarella was on parole for a driving under the influence charge from New York State. His parole was transferred from New York to Pennsylvania.

[2] Albarella was employed at CC Motor Sports which is an ATV repair shop. CC Motor Sports has two locations in Forty Fort at 1340 Wyoming Avenue and at 19 Shoemaker Street. Police accused Albarella of fleeing on an ATV from police. The Commonwealth later dropped the felony fleeing charges and allowed Albarella to plead guilty to summary traffic violations.

32.     Coslet, Basov, and Tuzinski then went to 105 Oak Street, Forty Fort, PA 18704 ("105 Oak St."), which was Albarella's state parole approved residence, to search for Albarella.

33.     Albarella's wife informed Coslet, Basov, and Tuzinski that Albarella was not at 105 Oak Street, they were estranged, and she had not seen him in the last week.

34.     Coslet, Basov, and Tuzinski then went to Yaksima's Home at 22 Sullivan Street, Forty Fort, Pennsylvania ("22 Sullivan St." or "Yaksima's Home") to look for Albarella.

35.     Yaksima told Coslet, Basov, and Tuzinski that Albarella occasionally stays at 22 Sullivan St., that Albarella was not at Yaksima's Home at this time, and she refused to consent to a search of her home.

36.     Coslet, Basov, and Tuzinski never saw Albarella at 22 Sullivan St. on February 6, 2021.

37.     Coslet testified under oath that after his investigation on February 6, 2021, he "had no probable cause to enter" the 22 Sullivan St. to look for Albarella.

38.     On February 7, 2021, Basov, Smith, Tuzinski, Owens, Ramirez, Wolinsky and other police officers returned to 22 Sullivan St. looking for Albarella.

39.    At 6:26p.m. on February 7, 2021, dispatch reports show that police went to 22 Sullivan St. to "SERVE WARRANT".

40.    Smith and Basov were wearing body cameras on February 7, 2021.

41.    Smith's body camera begins at roughly 6:35p.m. on February 7, 2021. A redacted copy of Smith's body camera is attached as Exhibit A.[3] [4]

42.    Smith can be scene skulking around Yaksima's Home in the beginning of the footage.

43.    One of the officers suggested calling Yaksima's landlord to enter the house under the pretense of an emergency.[5]

44.    Smith stated that the "DA" informed police that they did not have enough evidence to establish probable cause for a search warrant and if they don't have enough evidence for a search warrant, they cannot use the exigency doctrine to enter the residence.[6]

---

[3] The video attached as Exhibit A was redacted to remove the images of minor children. A full and complete copy of the body camera can be provided in discovery.
[4] Since the video cannot be uploaded electronically, undersigned will send a physical copy to the clerk of the Middle District of Pennsylvania.
[5] Exhibit A, 10:55–11:20.
[6] Exhibit A, 11:22–11:30.

45.    In response, a Defendant said that he thought he just heard someone cry out "help" and asked the other Defendants "did you hear help?" The Defendants then shared a laugh about the idea of falsifying exigency.[7]

46.    Smith could not see movement inside the residence.

47.    Smith approached a vehicle driven by Tuzinski.[8]

48.    Tuzinski attempted to call Albarella on the phone, the phone rang, but no one answered.

49.    Smith suggested that Tuzinski keep calling to see if police can hear the phone ringing from inside of the residence.

50.    Tuzinski then repeatedly called Albarella's phone number.

51.    The Defendants could not hear Albarella's phone ring from inside the residence.

52.    Tuzinski told Smith that he heard someone calling for help inside of Yaksima's residence.[9]

53.    Smith laughed at Tuzinski's comment about falsifying exigency.[10]

---

[7] Exhibit A, 11:35–11:46.
[8] Exhibit A, 14:36.
[9] Exhibit A, 20:06–20:33.
[10] Exhibit A, 20:06–20:33.

54.     Tuzinski said that he previously illegally entered a residence in Forty Fort by fabricating someone calling for help, the same tactic he urged Smith to employ to enter Yaksima's home.[11]

55.     Smith replied, "that is the old school way to do it."[12]

56.     Smith then asked Basov to call Coslett and ask if he can come to enter the house.

57.     Smith based his request for Coslett's intervention, in part, on an alleged ping location report from Albarella's cell service provider that supposedly showed that Albarella's cell phone was within 700 meters of Yaksima's Home.

58.     This phone ping was illegally performed/obtained if it existed at all.

59.     Even if the phone ping was legally performed, two of CC Motor Sports buildings, where Albarella worked, were within the radius of the ping report. CC Motor Sports is located extremely close to 22 Sullivan St. Yaksima's Home and CC Motor Sports were within the radius of the ping report. Therefore, the ping report, or any cell service location data, was meaningless.

---

[11] Exhibit A, 20:06–20:33.
[12] Exhibit A, 20:06–20:33.

60.     Even if the phone ping was actually performed, Albarella's approved residence of 105 Oak Street was also within the general area of any location information and therefore, any location information the ping report offered was meaningless.

61.     Smith and other Defendants unconstitutionally searched Yaksima's property and trespassed on Yaksima's property to find a package that was allegedly addressed to Albarella.

62.     However, this package listed 105 Oak Street as Albarella's address.

63.     Defendants mocked the Assistant District Attorney for not approving a search warrant. While doing so, they commented that the Assistant District Attorney would conclude that the package is not good enough for a search warrant since it was addressed to 105 Oak Street.[13]

64.     Tuzinski and Smith then concocted a plan to have code enforcement enter the house without a warrant by claiming there were dangerous conditions at 22 Sullivan St.[14]

---

[13] Exhibit A, 23:50–24:08.
[14] Exhibit A, 24:17–25:10.

65.     Tuzinski specifically stated "I am going to start looking for reasons" when discussing this illegal plan to use fabricated code enforcement violations to enter Yaksima's Home.[15]

66.     Smith and Tuzinski then commented that a rain gutter looked unsafe, and then called code enforcement in an attempt to condemn the house so they could illegally enter it.

67.     Basov commented that this house reminded him of his apartment that had mold and it was dangerous.

68.     The video makes clear that all Defendants engaged in the conspiracy to illegally condemn Yaksima's home as a pretext to violate her Fourth Amendment rights.

69.     Basov and Defendants joked that all deals with Albarella were out of the question unless Albarella gave Basov a hand job, which was a clear reference to a lewd sexual act.[16]

70.     Tuzinski obtained Yaksima's phone number and attempted to call her. No one answered Yaksima's phone number.

71.     Smith specifically remarked that they did not know if Albarella was at Yaksima's Home prior to their illegal entry into Yaksima's Home.[17]

---

[15] Exhibit A, 24:17–25:10.
[16] Exhibit A, 26:48–27:40.
[17] Exhibit A, 38:20–38:35.

72.      The Defendants congregated to see if they could manufacture exigency.

73.      The Defendants decided to fabricate that Albarella was suicidal and that they needed to enter Yaksima's Home because he suddenly stopped answering his phone.[18]

74.      During this meeting, Tuzinski again stated that he was calling the landlord to enter the house after he again tried to fabricate that someone was calling for help from the house.[19]

75.      Smith then commented that if Albarella was going to kill himself he would be dead already because police have been standing outside the house so long.[20]

76.      Smith said they believed he was here because they pinged his phone and it is within "700 and something meters" of Yaksima's Home.[21]

77.      Smith and Basov falsely asserted that they had "tons" of witnesses that stated Albarrella resided at Yaksima's Home.

78.      As recorded on a body camera, Defendants knew that the alleged neighbor that saw Albarella at Yaksima's Home had not seen

---

[18] Exhibit A, 38:00–38:45.
[19] Exhibit A, 38:12–38:24.
[20] Exhibit A, 52:40–53:00.
[21] Exhibit A, 39:10–39:22.

Albarella at 22 Sullivan St. since Wednesday, February 3, 2021, which was four days prior.[22]

79.　　Smith illegally searched Yaksima's garage by prying open a door to look inside.[23]

80.　　Basov misrepresented the facts known to him about the case to the Assistant District Attorney in order to gain permission from the Assistant District Attorney to enter Yaksima's Home based upon the exigency exception to the warrant requirement.

81.　　The Assistant District Attorney would not have changed his mind and approved the police entry into Yaksima's Home without a warrant if Basov did not make misrepresentations.

82.　　Smith specifically testified under oath at a prior hearing that "Mr. Albarella made threats prior to us going to that house via text, which I saw, and other communications, that he was not going back to prison that night."

83.　　Albarella was friends with Shaun Flynn ("Flynn") who is employed as an officer with the Pennsylvania State Police. Albarella and Flynn communicated about the incident and the resulting arrest warrant via text message. According to his text messages with Albarella, Flynn communicated with state parole agents and the Forty Fort Police on

---

[22] Exhibit A, 54:15–54:35.
[23] Exhibit A, 56:40–57:00.

16

Albarella's behalf.  Attached as Exhibit B are the text messages between Albarella and Flynn.[24]

84.      Albarella did not threatened suicide or harm to anyone in these text messages.

85.      Instead, in Albarella's text messages to Flynn he: (i) explained that he would not turn himself in until after his mother's funeral; (ii) discussed, with Flynn, how Basov filed ridiculous criminal charges against him; (iii) joked about fixing a "quad" for Flynn's brother; (iv) offered to help police reduce crime in Forty Fort; and, (v) ultimately told Flynn that he was "ok" and planned on moving his life forward.[25]

86.      Albarella also exchanged text messages with Tuzinski on February 6, 2021 and February 7, 2021. These messages are attached as Exhibit C.[26]

87.      In these messages, Albarella never threatened suicide or to harm anyone.[27]

---

[24] Undersigned redacted various phone numbers from Exhibit B. An unredacted copy will be provided in discovery.
[25] Exhibit B.
[26] Undersigned redacted various phone numbers from Exhibit C. An unredacted copy will be provided in discovery.
[27] Exhibit C.

88.    Instead, Albarella told Tuzinski that he planned to surrender with his attorney after he talked with his attorney.[28]

89.    As Ramirez and Smith prepared to enter Yaksima's home, Smith remarked that he didn't believe Albarella had a gun, so he was not going to put on body armor prior to making entry.[29]

90.    Owens kicked in the front door to Yaksima's Home while the other Defendants congregated behind him.[30]

91.    All Defendants entered Yaksima's Home after Owens kicked in the front door.

92.    Owens yelled "search warrant" when he kicked open the door.[31]

93.    Police found Albarella on the second floor of Yaksima's Home in bed with Yaksima.

94.    Owens used unnecessary and excessive force against Albarella while stating "welcome to my world buddy" while taking Albarella into custody.[32]

95.    Albarella told police he was going to turn himself in that day, which was also what he texted Tuzinski earlier.[33]

---

[28] Exhibit C.
[29] Exhibit A, 1:01:20–1:01:44.
[30] Exhibit A, 1:03:00–1:03:20.
[31] Exhibit A, 1:03:00–:1:03:20.
[32] Exhibit A, 1:03:20–1:04:45.
[33] Exhibit A, 1:04:40–1:04:55.

96.     Police held Yaksima at gunpoint even though she was clearly unarmed, engaged in no threatening conduct, and was laying in the bed with flu-like symptoms.[34]

97.     Smith ordered Defendants to handcuff and arrest Yaksima.[35]

98.     Yaksima was then forcibly taken by Defendants out of her house, with inadequate clothing in the winter weather.

99.     After the unconstitutional arrests were made, Tuzinski and Smith permitted the landlord, his companion, and the owner of CC Motor Sports to enter Yaksima's Home and congregate inside.

100.    After being processed, Yaksima was taken to the Luzerne County Correctional Facility.

101.    At 8:31 a.m., on February 8, 2021, Yaksima was arraigned, unsecured bail was set, and she was later released from prison.

102.    After Defendants arrested Yaksima, they called Children and Youth who removed her children from her home.

103.    Forty Fort police posted on their Facebook account that they arrested Yaksima and Alberella.

104.    Yaksima was later evicted by her landlord because of Defendants' illegal activity in this case.

---

[34] Exhibit A, 1:03:20–1:06:35.
[35] Exhibit A, 1:07:00–1:08:00.

105.    Yaksima has suffered innumerable harms from the unconstitutional conduct of Defendants including, but not limited to, being arrested, evicted, incarcerated, having her children taken by the government, loss of freedom, reputational harm, fear, anxiety, stress, emotional distress, damage to her former residence, and attorney fees.

106.    Pennsylvania's Constitution provides that the right to reputation is a fundamental right and cannot be infringed upon. *In re J.B.*, 107 A.3d 1, 16 (Pa. 2014) ("This Court has recognized that the right to reputation . . . is a fundamental right under the Pennsylvania Constitution.")(citing *R. v. Commonwealth, Dep't of Pub. Welfare,* 636 A.2d 142, 149 (Pa. 1994); *Hatchard v. Westinghouse Broadcasting Co.,* 532 A.2d 346, 351 (Pa. 1987); *Moyer v. Phillips,* 341 A.2d 441, 443 (1975); *Meas v. Johnson,* 39 A. 562, 563 (Pa. 1898)).

107.    Plaintiff's reputation has been damaged because of Defendants' unconstitutional actions.

108.    After prolonging litigation concerning a motion to suppress evidence for the violations of Yaksima's constitutional rights, the Luzerne County District Attorney's Office withdrew the charge filed against Yaksima.

109.    In its motion to withdraw the charge, the Commonwealth specifically stated that "[a]fter speaking to [the] Officer and other relevant

witnesses, and following a review of case law, a transcript of the Preliminary Hearing, and other pertinent documents related to the case, the Commonwealth does not believe that it can establish an imminent danger legally sufficient to provide exigent circumstances to justify the search."

110.    The actions of Defendants were committed deliberately, intentionally, willfully, wantonly, and constitute conduct so egregious as to shock the conscience.

111.    The actions of Defendants were in callous disregard of Plaintiff's constitutional rights.

112.    These facts are demonstrated by, among other things, Defendants: (i) illegally searching Yaksima's front porch and mailbox; (ii) illegally searching her back porch and garbage; (iii) illegally searching her garage; (iv) unashamedly manufacturing reasons to enter Yaksima's home in violation of her constitutional rights; (v) Tuzinski's admission that he previously manufactured exigency to unconstitutionally search someone's home; (vi) making jokes about the situation; (vii) suggesting that Albarella could resolve the arrest warrant by performing sex acts on a police officer; (viii) the overall attitudes and actions of the Defendants during the situation; (ix) using excessive force against Albarella after Defendants illegally and forcibly entered Yaksima's Home; (x) allowing various non-law enforcement

individuals to enter Yaksima's Home after her arrest; (xi) falsifying police reports and the criminal complaint; and (xii) Smith perjuring himself at the preliminary hearing regarding viewing suicidal text messages.

113.    Defendants' disregard for Yaksima's constitutional rights was evident when they allowed Albarella to resolve the charge justifying his felony warrant with guilty pleas to summary Vehicle Code violations. This also shows that Defendants set aside Yaksima's constitutional rights to merely flaunt their authority, display police power, show political power, and to harass anyone who defied them.

114.    Defendant's disregard for Yaksima's constitutional rights continued months later when Smith perjured himself during the preliminary hearing to cover up the illegal search, and the willful, knowing, and blatant disregard for Yaksima's constitutional rights by all Defendants.

115.    Defendant's disregard for Yaksima's constitutional rights persisted until the Luzerne County District Attorney's Office finally withdrew the charges against her.

## *Count I – 42 U.S.C. § 1983 Claim Unconstitutional Search and Seizure*

116.    The foregoing paragraphs are incorporated herein by reference.

117.    The Defendants in this case are persons within the meaning of 42 U.S.C. § 1983.

118.    At all relevant times, the Defendants were acting under color of law within the meaning of 42 U.S.C. § 1983.

119.    While acting under color of law, Defendants caused Plaintiff to be subjected to a deprivation of rights, liberties, and immunities secured by the Constitution. Namely, Defendants caused Plaintiff to be deprived of the rights, liberties, and immunities that she is granted under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution.

120.    A person has a reasonable expectation of privacy in his/her dwelling.

121.    Plaintiff had a reasonable expectation of privacy in 22 Sullivan St. at all times relevant to this complaint.

122.    Plaintiff had a subjective expectation of privacy in 22 Sullivan St. at all times relevant to this complaint.

123.    Plaintiff had an objective expectation of privacy in 22 Sullivan St. all times relevant to this complaint.

124.    Defendants unreasonably seized Plaintiff's property on February 7, 2021.

125.    Defendants unreasonably searched Plaintiff's property on February 7, 2021.

126.    Defendants had no warrant to enter Plaintiff's house on February 7, 2021.

127.    Defendants had no probable cause to enter Plaintiff's house on February 7, 2021.

128.    Defendants had no exigent circumstances to enter Plaintiff's house on February 7, 2021.

129.    Defendants did not have consent to enter Plaintiff's house on February 7, 2021.

130.    Defendants severely damaged Plaintiff's front door and entrance by breaking her door down in violation of Plaintiff's rights.

131.    Defendants illegally searched and seized Plaintiff's property as described *supra*.

132.    It is the policy or custom of Forty Fort to unconstitutionally and illegally search and seize property.

133.    It is the policy or custom of Forty Fort to fabricate exigency to unconstitutionally and illegally search and seize property.

134.    It is the policy or custom of Forty Fort to unconstitutionally and illegally obtain evidence as a pretext to arrest individuals.

135.    It is the policy or custom of Forty Fort to use police power to harass people that challenge their political authority.

136.    This fact is demonstrated by the chief policymaker for Forty Fort, Tuzinski, encouraging and directing police officers to fabricate exigency and illegally enter Yaksima's home.

137.    This fact is demonstrated by the chief policymaker for Forty Fort, Tuzinski, stating that he had previously manufactured exigency in order to illegally enter someone's home.

138.    This fact is demonstrated by Smith stating that manufacturing exigency is the "old school way" to illegally enter a person's home thereby demonstrating that Forty Fort has a long-standing policy to manufacture exigency to illegal enter and/or search a person's property.

139.    The mayor of Forty Fort, Tuzinski, encouraged Defendants to fabricate exigency to illegally enter Yaksima's Home thereby proving that Forty Fort trains its employees to violate the rights of the residents of Forty Fort.

140.    There is a history of municipal employees, such as the named Defendants, fabricating exigency as stated by Smith and Tuzinski on video as described *supra*.

141.    Tuzinski trained and/or supervised Defendants on the policies or customs described above.

142.    Smith trained and/or supervised Defendants on the policies or customs described above.

143.    Basov trained and/or supervised Defendants on the policies or customs described above.

144.    Because of the above-described policies and customs, Plaintiff suffered a deprivation of liberty under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution through an unconstitutional false arrest and search of her home.

145.    Tuzinski ratified the actions of his subordinates, including all of the named Defendants, in this case by encouraging them to fabricate exigency and illegally enter Yaksima's Home.

146.    Smith ratified the actions of his subordinates, including all of the named Defendants, in this case by encouraging them to fabricate exigency and illegally enter Yaksima's Home.

147.     Basov ratified the actions of his subordinates, including all of the named Defendants, in this case by encouraging them to fabricate exigency and illegally enter Yaksima's Home.

148.     At the time of the unconstitutional entry into Yaksima's Home, it was clearly established that either a warrant supported by probable cause or an exception to the warrant requirement was necessary to enter Yaksima's Home.

149.     This fact is shown by Defendants stating that they needed either a warrant or an exception, such as exigency, to the warrant requirement to enter Yaksima's Home throughout the night.

150.     Plaintiff suffered numerous damages as stated throughout this complaint as a result of Defendants lawless and unconstitutional actions.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, punitive damages, costs, and attorney's fees.[36]

### _Count II – 42 U.S.C. § 1983 Claim for False Arrest_

151.     The foregoing paragraphs are incorporated herein by reference.

152.     Plaintiff was arrested by Defendants after they illegally entered her house.

---

[36] Plaintiff only asserts the punitive damages claims against the Defendants in their individual capacity. Plaintiff does not assert the punitive damages claim against Forty Fort since punitive damages cannot be obtained when a lawsuit under 42 U.S.C. § 1983 is brought against an individual in their official capacity.

153.    Any probable cause Defendants obtained to arrest Plaintiff was from their illegal and unconstitutional actions.

154.    No legally obtained evidence to support probable cause existed to arrest Plaintiff for committing any crime on or about February 7, 2021.

155.    Defendants knew this fact since they did not formally decide to arrest Yaksima until after they illegally obtained evidence during the unconstitutional search of Yaksima's Home.

156.    Defendants had no warrant to arrest Plaintiff on February 7, 2021.

157.    Defendants falsely arrested Plaintiff on February 7, 2021.

158.    Plaintiff suffered damages as described *supra* as a result of this unconstitutional arrest.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, punitive damages, costs, and attorney's fees.[37]

*Count III – 42 U.S.C. § 1983 Claim for Unconstitutional Conspiracy*

159.    The foregoing paragraphs are incorporated herein by reference.

160.    The Defendants entered into a conspiratorial agreement prior to Plaintiff being subjected to the unconstitutional search and seizure described *supra*.

---

[37] *See* Footnote 35.

161.    The agreement between the Defendants was to forcibly enter Yaksima's Home without a warrant or probable cause after fabricating exigency.

162.    Defendants knew that they needed either a warrant supported by probable cause or probable cause and exigency to support their entry into Yaksima's Home but nonetheless agreed to forcibly enter Yaksima's Home in violation of said doctrines.

163.    The conspiracy began, at the latest, at 22 Sullivan Street in Forty Fort on February 6, 2021.

164.    The conspiracy was furthered when Basov, Owens, Ramirez, Smith, and Wolinsky made light of the situation while trying to fabricate exigency to justify a warrantless residential entry.

165.    The conspiracy was furthered when Tuzinski encouraged Defendants to fabricate exigency.

166.    The conspiracy was furthered when Smith told Tuzinski that the "old school way" was to fabricate exigency.

167.    The conspiracy was furthered when Smith reminded Tuzinski that his body camera was recording thereby discretely telling Tuzinski to be careful about discussing the nefarious conduct they were plotting.

168.    The conspiracy was furthered when Smith and Tuzinski discussed shining unnecessary lights from a fire department on Yaksima's Home "to do a Noriega".

169.    The conspiracy was furthered when Ramirez and Wolinsky illegally searched the back porch to Yaksima's Home and the package on it.

170.    The conspiracy was furthered when Smith directed Basov to call state parole to report that Albarella had mail at 22 Sullivan St. with the goal of motivating state parole to make entry into Yaksima's Home, when Smith knew that the package was addressed to Albarella's 105 Oak Street residence and was insufficient to connect Alberella to Yaksima's Home.

171.    The conspiracy was furthered when Basov claimed the Yaksima's Home was fortified with cameras and boarded windows.

172.    The conspiracy was furthered when Owens falsely claimed to see movement inside Yaksima's Home.

173.    The conspiracy was furthered when Owens and Smith forced entry into the garage to Yaksima's Home search for Albarella.

174.    The conspiracy was furthered when Defendants decided to fabricate reports about Albarella making suicidal threats to justify a warrantless residential entry.

175.    The conspiracy was furthered when Defendants decided to mislead others regarding cell service data by suggesting that it showed Albarella was inside 22 Sullivan St.

176.    The conspiracy was furthered when Defendants decided to mislead others about witnesses stating Albarella was inside 22 Sullivan St.

177.    The conspiracy was furthered when Basov, Smith, and Tuzinski misreported when a neighbor last saw Albarella at 22 Sullivan St.

178.    The conspiracy was furthered when Basov misrepresented the facts of the case to the Assistant District Attorney to obtain permission to enter Plaintiff's residence.

179.    The conspiracy was furthered when Ramirez and Smith decided not to use armor when making the illegal entry because Smith did not think Albarella had a gun, thereby showing he was not a danger to himself or others.

180.    The conspiracy was furthered when Defendants, specifically, Owens, kicked down the door to Yaksima's Home.

181.    The conspiracy was furthered when Basov, Owens, Ramirez, Smith, and Wolinsky pointed guns at Yaksima while she was in bed.

182.    The conspiracy was furthered when Defendants arrested Yaksima.

183.     The conspiracy was furthered when Defendants called CYS to take Yaksima's children from the residence.

184.     The conspiracy was furthered when Smith and Tuzinski made false reports about the case to Yaksima's landlord and to Albarella's employer.

185.     The conspiracy was furthered when Defendants pursued unwarranted criminal charges against Plaintiff.

186.     The conspiracy was furthered when Smith perjured himself at the preliminary hearing to attempt to cover up the fact that Defendants fabricated exigency.

187.     This conspiracy ended at the latest when the Commonwealth of Pennsylvania dismissed the charge against Yaksima on or about February 8, 2022.

188.     The purpose of the unconstitutional conspiracy was to forcibly enter Plaintiff's residence in violation of her constitutional rights, unjustifiably charge Plaintiff with a crime, and charge Alberella with a crime. These actions were designed to drive Yaksima and Alberella out of Forty Fort.

189.     Defendants took action to achieve the purposes of this unconstitutional conspiracy as described *supra*.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, costs, attorney's fees, and punitive damages.[38]

### *Count IV – Conversion*

190.     The foregoing paragraphs are incorporated herein by reference.

191.     Defendants in this case deprived Plaintiff of the use of her door and residence at 22 Sullivan Street without her consent or lawful justification on February 7, 2021.

192.     Defendants intentionally damaged Plaintiff's door, entryway, and home located at 22 Sullivan Street on February 7, 2021.

193.     Plaintiff had rightful possession of 22 Sullivan Street on February 7, 2021.

194.     Plaintiff also had an immediate right to possession of 22 Sullivan Street on February 7, 2021.

195.     The conduct of Defendants was willful, wanton, and was so egregious as to shock the conscience.

196.     Plaintiff suffered damages as described above as a result of Defendants conversion.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, costs, and punitive damages.

---

[38] *See* Footnote 35.

## *Count V – Trespass to Chattel*

197.    The foregoing paragraphs are incorporated herein by reference.

198.    Defendants intentionally intermeddled with the door, entrance way, and residence of Defendant on February 7, 2021 at 22 Sullivan Street by damaging her door, entrance way, and home.

199.    Plaintiff had rightful possession of 22 Sullivan Street on February 7, 2021.

200.    Plaintiff also had an immediate right to possession of 22 Sullivan Street on February 7, 2021.

201.    The conduct of Defendants was willful, wanton, and was so egregious as to shock the conscience.

202.    Plaintiff suffered damages as described above as a result of Defendants conversion.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, costs, and punitive damages.

## *Count VI – Jury Trial Demand*

203.    The foregoing paragraphs are incorporated herein by reference.

204.    Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for

  a.  Actual damages;

b.  Punitive damages;

c.  Attorney's fees;

d.  Costs;

e.  Interest; and

f.  Any further relief that the Court deems just and proper.

Respectfully Submitted,

*/s/ Leonard Gryskewicz, Jr.*
Leonard Gryskewicz, Jr.
Attorney for Plaintiff
PA321467
Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838

*/s/ David V. Lampman, II*
David V. Lampman, II
Attorney for Plaintiff
PA93332
Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838